National Bank of Cleburne v. Gulf, Colorado & Santa Fe
Railway Company et al.

No. 1055.   Decided January 20, 1902.

1.—Laborer's Lien—Railways.

Article 3312, Revised Statutes, does not give a lien to mechanics or laborers employed in the construction of machine shops, roundhouses, etc., situated upon the land of a railway company but not on its right of way.   (Pp. 182-184.)

2.—Same—Statute Construed—Equipments.

The word "equipments," being used in connection with the words "locomotive, car," etc., includes only things used in like manner in connection with the operation of the road, and is not broad enough to include structures like machine shops, roundhouses, and the like, though necessary to the operation of the road.   (P. 182.)

3.—Same—Railroad—What It Includes.

The word "railroad" in article 3312, Revised Statutes, does not embrace machine shops, etc., not on the right of way, the term as used in the statutes (articles 4422, 4425, 4483) appearing to designate the right of way and structures upon it.   (Pp. 183, 184.)

4.—Mechanic's Lien—Railroad Buildings.

The rights of mechanics, laborers, and materialmen constructing buildings, such as machine shops, of a railway upon grounds not embraced in its right of way, are protected by the general law for mechanic's liens, Revised Statutes, article 3294, and must be secured by compliance with that, and not with article 3312.   (P. 184.)

5.—Indemnity Bond—Who May Sue.

A mere bond of indemnity given by contractors and sureties to protect the owner of property against liens of workmen constructing buildings thereon, does not give a right of action by such laborers, for their claims, against the sureties.   (Pp. 184, 185.)

Questions certified by the Court of Civil Appeals for the Fifth District, on error from Johnson County.

*Wear & Morrow, L. B. Davis,* and *W. D. McCoy,* for plaintiff in error. The court erred in sustaining the appellee, the Gulf, Colorado & Santa Fe Railway Company's, general demurrer to appellant, the National Bank of Cleburne's, second amended petition, because the averments in said petition state that said shops are a part of said railway and are used for and in connection with the operation of said railway, and are built upon and over a portion of its said tracks and turnouts, and are a part of its said tracks; which averments presented an issue of fact which the court could not determine on a general demurrer. Rev. Stats., art. 3312; Railway v. Rucker, 59 Texas, 587; Railway v. Daniels, 62 Texas, 70.

The averments in appellant's second amended petition show said shops to be a part of the equipment of said appellee's railway, and that said shops and railway were subject to the lien claimed by the appellant, which averments made an issue of fact which the court could not determine on demurrer, and therefore erred in sustaining appellee's general demurrer to appellant's second amended petition and rendering

judgment against appellant. Same authorities; also People v. Railway, 45 N. E. Rep., 826; Rubey v. Coal Co., 21 Mo. App., 159.

The averments in appellant's second amended petition showed that the claim for money set out in said petition was for work and labor done by the parties to whom said due bills were issued, described in exhibit "A" referred to in its petition, for the appellee railway company, and is a lien on the railroad and its equipment, and therefore the court erred in sustaining the demurrer of appellee to said second amended petition and rendering judgment against appellant.

The court erred in sustaining the general demurrer to plaintiff's petition because it appeared from the averments of said petition that plaintiff had a lien under article 3294 of the Revised Statutes securing the indebtedness declared on, said lien existing notwithstanding there is no averment that any steps had been taken to secure it other than the bringing of this suit. Strang v. Pray, 35 S. W. Rep., 1055.

The established rule of construction of lien statutes is in favor of the laborer. Burke v. Brown, 30 S. W. Rep., 936; Bassett v. Mills, 89 Texas, 162; Trammel v. Mount, 68 Texas, 213; Wilson v. Bank, 103 U. S., 770.

We think that our contention, that under article 3312 the species of railway property on which plaintiff claims lien is included, is more consistent with the liberal rule of construction recognized in the authorities above cited. In other words we think that, applying the proper rule of construction, the words "any railroad, locomotive, car, or other equipment of a railroad" include roundhouses and machine shops, especially when it is shown, as in this case, that roundhouses and machine shops are necessary in the operation of the railroad, and are so intimately connected with it that they are useless for any purpose except for railroad purposes, and when they are situated upon land which has in fact become a part of the right of way of the railroad company. Our statute on the subject of taxation, article 5082, Revised Statutes, subdivision 2, says: "Railroad shall include right of way, roadbed, superstructure, depots, and grounds upon which said depots are situated, and all shops and fixtures of every kind used in operating said road."

Webster says that the term railroad includes the road, tracks, etc., with all the lands, buildings, rolling stock, etc., pertaining to them and consisting of one property.

In the Century Dictionary and Encyclopedia it is said that, in common and accepted usage, the meaning of the term railroad and railway have been extended to include not only the permanent way, but every thing necessary to its operation, as rolling stock and buildings, including stations, roundhouses, locomotives, locomotive shops, car shops, and repair shops.

In the case of Railway v. United States, 93 United States, 442, the Supreme Court says: "Lord Chancellor Cottenham, in the case of Cother v. Railway, 2 Phillips, 473, said: 'The term railway, by itself,

includes all works authorized to be constructed, and, for the purpose of constructing the railway, the company are authorized to construct such stations and other works as they may think proper.' 1 Redf. on Railways, sec. 105. The 'works' referred to by the lord chancellor were those permanent and immovable appendages which constitute parts of the completed structure."

In the case of St. John v. Railway, 22 Wallace, 138, the Supreme Court says in passing upon the question as to what was meant by net earnings of the road: "Upon what ground can it be claimed that the category 'net earnings of the road' was not intended to embrace the net earnings of all the business of the company for the time being, whether done upon one or many roads?"

In the case of Railway v. Williams, 54 Pennsylvania State, 107, the court says in construing an act authorizing a company to construct and locate a railroad: "This grant of power unquestionably carries with it the power to construct turnouts, sidings, stations, and engine houses, and all the works and appendages usual in the convenient operation of a railway." A railway without switches, sidings, turnouts, and buildings for coal, water, engines, stations, etc., would be useless in a great measure. They are essential to the operation of the road and the transportation of freight and passengers with security and dispatch.

In the case of the United States v. Chaplin, 31 Federal Reporter, 895, the court says: "In common parlance a railway consists of 'the road' and the 'rolling stock.' The former includes everything that is immovable or affixed to the soil—such as station houses, roundhouses, platforms, watertanks, and machine shops. The road can not be operated without these, or considered constructed until they are built."

In Boisot on Mechanic's Lien, section 191, it is said: "Whether depots and buildings erected and used by a railroad company are to be treated as other buildings, or as a part of the road, is a question on which the authorities are not entirely harmonious. The prevailing view, however, is to treat them as a part of the road so that a lien for work done on them would extend over the road as an entirety."

*Crane & Greer*, for defendant in error Moss; *Adams & Truelove,* for defendants in error James, Capps, and Carter; *J. W. Terry, D. W. Odell,* and *Moore & Tenly,* for defendant in error Gulf, Colorado & Santa Fe Railway Company.—The court did not err in sustaining the defendant railway company's general demurrer to appellant's second amended petition, because the laws of Texas clearly indicate that in the matter of fixing mechanics', materialmen's, and laborers' lien on railroad property, buildings and shops are not included in the term "railroads." Const. 1876, art. 16, sec. 37; Acts of 1879, pp. 8 and 9; Acts of 1887, p. 17; Acts of 1889, pp. 110 to 114 inclusive; Acts of 1895, pp. 194 to 197; Rev. Stats., arts. 3295-3308.

The court correctly determined on demurrer, as a matter of law, that shops are not equipments within the meaning of the Texas statute defin-

ing laborers, mechanics, artisans, and materialmen's liens.    Railway v. Hoyt, 89 Wis., 314; People v. Railway, 45 N. E. Rep., 826; Rubey v. Coal Co., 21 Mo. App., 159; Atlanta Street Railway Co. v. Atlanta, 66 Ga., 107; 6 Am. and Eng. Enc. of Law, 655, and note, and vol. 11, p. 54; Century Dictionary, title "Equipment."

An examination of the record will disclose that the bond upon which Moss, Capps, Carter and James were sureties was a bond of indemnity given to the railroad company to secure it against loss or damage, but was not given for the purpose of securing the creditors, and no action can be maintained thereon by them or anyone in their behalf.    Jones L. Co. v. Villegas, 28 S. W. Rep., 558; Santleben v. Cement Co., 25 S. W. Rep., 143; Browne v. French, 22 S. W. Rep., 581; Todd v. Loan Assn., 55 Pac. Rep., 501; Marquette, etc., Building Co. v. Wilson, 67 N. W. Rep., 123; Pioneer S. and L. Co. v. Bartsch, 38 Am. St. Rep., 511; Knapp v. Swaney, 23 N. W. Rep., 162; M. Co. v. Wilson, 67 N. W. Rep., 123; Macatee v. Hamilton, 38 S. W. Rep., 530; Jefferson v. Asch, 25 Law. Rep. Ann., 257, and notes; Jefferson v. Asch, 39 Am. St. Rep., 618; Baxter v. Camp, 42 Law. Rep. Ann., 516; Buchanan v. Tilden, 158 N. Y. 109; Merrill v. Green, 55 N. Y., 270.

*Greene & Stewart,* for lumber companies, and *J. W. Terry,* for railway company, on cross-assignment.—Construing the contract and bond together, it was the intention of the parties to obligate Evans & Hoshour and the sureties on the bond to pay off and satisfy all claims for labor done or material furnished in the construction of the railway company's shops, etc., whether such claims amounted to a lien on the property or not.    There is nothing in the policy of the law forbidding the assumption of such obligation by the contractors and their sureties. Whether the motive inducing the railway company to require such a contract and bond was moral or immoral is immaterial.    The parties having made the contract, the railway company and the beneficiaries under the same—the three plaintiffs and the various interveners—were entitled to have the same enforced.    St. Louis, etc., Lime Co. v. Von Phul, 133 Mo., 561; Knapp v. Swaney, 56 Mich., 345; People v. Dodge, 52 Pac. Rep., 637; Sample v. Hale, 34 Neb., 220; Bassett v. Hughes, 43 Wis., 319; Lyman v. Lincoln, 38 Neb., 794; Iron Co. v. Frescoln, 43 Atl. Rep., 961; Jordan v. Kavanaugh, 63 Iowa, 152; Ross v. Crane, 74 Iowa, 375; Foster v. Water Co., 3 Lea, 42; Williams v. Markland, 15 Ind. App., 669; Fitzgerald v. Clay, 47 Neb., 816; Morton v. Harvey, 77 N. W. Rep., 808; Devers v. Howard, 144 Mo., 671; Hickman v. Layne, 47 Neb., 177; Baker v. Bryan, 64 Iowa, 561; 21 N. W. Rep., 83.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fifth District has certified to this court the following statement and questions:

"The appellant sued to recover of Evans & Hoshour, contractors, for the value of labor performed in the construction of machine shops, en-

gine house, etc., and to foreclose against the Gulf, Colorado & Santa Fe Railway Company's property a lien alleged to exist thereon by virtue of such labor, etc. Consolidated with this action were the suits of the Lutcher & Moore Lumber Company and the Lutcher & Moore Cypress Lumber Company, seeking to recover against Evans & Hoshour and their sureties for material furnished to the contractors and used in the construction of said structures.

"The court sustained general demurrers to the petitions of the bank and the two lumber companies, from which this appeal is prosecuted. The substance of the plaintiff's allegations, in so far as a lien is sought to be established, is that the Gulf, Colorado & Santa Fe Railway Company contracted with Evans & Hoshour for the latter to build for it, in the town of Cleburne, certain machine shop, work shop, paint shop and boiler house, chimney and pattern house, and also to build in the town of Temple a round house or boiler house, said structures to be erected on land belonging to said company which adjoins the right of way and 'is a part of same' and connected with said right of way by 'numerous switches, turnouts and side tracks, and said switches, turnouts and side tracks are used in connection with the business and operations of the said railway company and are necessary to the conduct of said business of said company in the operation of its said line of road, and they extend from the main line into and upon said strip of land aforesaid, which, as aforesaid, had been added to the right of way.' That said structures are a part of said railway and inseparably connected therewith, 'and are used for and in connection with the operation of said railway and are built upon and over a portion of its said tracks, switches and turnouts, and are a part of said works and are used for no other purpose than of operating said railway, and are useless for any other purpose, and are such works as are necessary, usual, and common in the operation of railroads.' That the contractors, Evans & Hoshour, employed a large number of laborers and mechanics to labor and work for them in the construction of said structures, and that for the value of the labor performed by them, the contractors issued to them due bills or pay checks which were transferred to plaintiff for a valuable consideration, etc. Plaintiff sues to recover of the contractors on the due bills or pay checks outstanding, and to foreclose an alleged lien on the property of the company, which is claimed by virtue of the work and labor performed on said structures. No lien is claimed by plaintiff to have been fixed by the filing of a contract or itemized statement as required by the Act of 1895, articles 3294 et seq., Revised Statutes, but is claimed to have been fixed by filing suit within twelve months after the labor was performed, as provided by article 3313, Revised Statutes.

"The allegations of the two lumber companies (which are adopted by plaintiff as to liability of the sureties on bond), seeking to recover on the contractors' bond executed to the railway company, set forth, in substance, the furnishing of material to the contractors, etc., the execution of the contract and bond, and the provisions thereof. The effect of the

contract alleged was that the contractors would construct the buildings for a specified consideration and deliver the same to the company 'free and discharged of all liens, claims, or charges whatever, completely finished on or before the first day of November, 1898.' The stipulations of the bond pertinent to the issues herein are as follows: 'And whereas, in the treaty of said contract, it was agreed that this bond or obligation should be entered into as an additional security to the said Gulf, Colorado & Santa Fe Railway Company for the due performance of said articles of agreement and of all and every the covenants, matters and things therein contained on the part and behalf of the said above bounden E. B. Evans and C. A. Hoshour to be done and performed. Now, the condition of this obligation is such, that if the said above bounden E. B. Evans and C. A. Hoshour shall well and faithfully pay to all laborers, mechanics, and materialmen and persons who supply such contractors with provisions or goods of any kind, all just debts due to such persons or to any person to whom any part of such work is given, incurred in carrying on such work agreed to be done and performed by the said above bounden E. B. Evans and C. A. Hoshour, and also shall well and truly save and keep harmless the said Gulf, Colorado & Santa Fe Railway Company from the payment of any and all liens, claims, demands, costs, suits, judgments, and executions that may be made, taken, rendered, had, or obtained against the said Gulf, Colorado & Santa Fe Railway Company or its property by reason of the nonpayment of any of the debts, claims, or demands of any of the several parties hereinbefore mentioned and provided for, and shall duly perform and observe all the stipulations and agreements contained in said contract and on his part to be performed and observed, and so that any alteration which may be made by agreement between said bounden E. B. Evans and C. A. Hoshour and the Gulf, Colorado & Santa Fe Railway Company, in the terms of said contract or the nature of the work to be done thereunder, or the giving by the said Gulf, Colorado & Santa Fe Railway Company, its successors or assigns, of any extension of the time for performing the said contract or any of the stipulations contained therein, and on the part of the said above bounden E. B. Evans and C. A. Hoshour, to be performed, or any other forbearance on the part of the Gulf, Colorado & Santa Fe Railway Company, its successors or assigns, to the said above bounden E. B. Evans and C. A. Hoshour, his successors, administrators, successors, or assigns, shall not in any way release the said above bounden sureties, or either of them, or either of their executors, administrators, successors or assigns from their or his or its liability under the above written bond, then this obligation shall be null and void; otherwise to be in full force and virtue.'

"Questions: 1. Does article 3312, Revised Statutes, which gives a lien to mechanics, laborers, and operatives who perform labor in the construction, operation or repair of any railroad, include mechanics and laborers who perform labor in the erection of machine shops, work shops, roundhouses, etc., for a railroad company, in manner and form as al-

leged by plaintiff; or are such mechanics and laborers, in order to fix liens, governed by the provisions of articles 3294, et seq., Revised Statutes? In other words, does the term 'railroad,' as used in article 3312, include such structures when constructed for the purpose of operating said road?

"2. Is the bond declared upon to be considered only as indemnity for the railroad company; or are the mechanics, laborers and materialmen who performed labor and furnished material in the construction of said structures, by its terms, beneficiaries and entitled to a right of action thereon?"

Article 16 of our State Constitution embraces the following sections:

"Sec. 35. The Legislature shall, at its first session, pass laws to protect laborers on public buildings, streets, roads, railroads, canals and other similar public works, against the failure of contractors and subcontractors to pay their current wages when due, and to make the corporation, company, or individual for whose benefit the work is done, responsible for their ultimate payment.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

"Sec. 37. Mechanics, artisans, and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

In pursuance of the requirements of section 37, the Fifteenth Legislature enacted a law entitled, "An Act to provide for and regulate mechanics', contractors', builders', and other liens in the State of Texas," approved August 7, 1876. Laws 1876, p. 91. This act constitutes the basis from which our present law on the subject of mechanics' liens has been developed. It did not embrace the rights of laborers upon railroads in its original form, and in that respect has not been enlarged since its original adoption. Railway v. Driscol, 52 Texas, 13.

The Sixteenth Legislature, in obedience to the mandate of section 35, quoted above, enacted a law entitled, "An act to protect mechanics, laborers, and operatives on railroads against the failure of owners, contractors and subcontractors or agents, to pay their wages, when due, and provide a lien for such wages," approved February 18, 1879. Laws of 1879, p. 8. The first section of this act, with a slight amendment made in 1887, constitutes article 3312 of the Revised Civil Statutes, which is the subject of investigation in this case.

"Art. 3312. All mechanics, laborers, and operatives who may have performed labor, or worked with tools, teams, or otherwise, in the construction, operation, or repair of any railroad, locomotive, car, or other equipment of a railroad, and to whom wages are due or owing for such work, or for the work of tools or teams thus employed, or for work otherwise performed, shall hereafter have a lien prior to all others upon such railroad and its equipments for the amount due him for personal services, or for the use of tools or teams."

The first question submitted calls for the construction of the phrase "such railroad and its equipments," used in the above quoted article. The word "equipment" is used in the same article in association with other words, thus: "Locomotive, car, or other equipment of a railroad." From its association with the words indicating the movable equipments of the railroad, the Legislature intended, by "other equipments," to include all other things used in like manner in connection with the operation of the railroad, but it can not be construed to include everything that is necessary to the operation of the railroad, and therefore it is not broad enough to include structures like machine shops, round-houses, and the like. Sutherland on Stat. Const., sec. 262; Schenley's Appeal, 70 Pa. St., 98. This reduces the inquiry to the question, "are machine shops, workshops, roundhouses," not upon the right of way, etc., embraced within the meaning of the term "railroad?" We have no specific statutory definition of the word, but the following articles of our Revised Statutes serve to show what our Legislature meant by "railroad" in article 3312:

"Art. 4422. Any railroad corporation shall have the right to construct and operate a railroad between any points within this State and to connect at the State line with railroads of other States.

\*    \*    \*    \*    .\*    \*    \*    \*    \*    \*

"Art. 4425. Such corporation shall have the right to lay out its road not exceeding two hundred feet in width, and to construct the same; and for the purpose of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of its railway, and to cut down any standing trees that may be in danger of falling upon or obstructing the railway, making compensation in the manner provided by law.

\*    \*    \*    \*    \*    \*    .\*    \*    \*    \*

"Art. 4483. Such corporation shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery for the accommodation and use of passengers, freights, and business interests, or which may be necessary for the construction or operation of its railway; but no railway shall have the power, either by its own employes or other persons, to construct any buildings along the line of their railroad to be occupied by their employes or others, except at their respective depot stations and section houses, and at such places only such building as may be necessary for the transaction of their legitimate business operations, and for shelter of their employes, nor shall they use, occupy, or cultivate any part of the right of way over which their respective roads may pass, with the exception aforesaid. for any other purpose than the construction and keeping in repair of their respective railways."

The power to construct roads in this State between any points. and to erect upon the right of way all buildings, machinery, and other things necessary for the "accommodation and use of passengers or business interests, or for the construction and operation of its railway," together

with the "right to lay out its road not exceeding two hundred feet in width, and to construct the same," recognizes the right of way as the road and operates as a designation of that right of way and structures upon it as the "road" or "railroad" of the corporation.

We have given careful consideration to the authorities cited by the honorable Court of Civil Appeals in support of its judgment upon this point, but we find no one of them that involved a state of facts similar to this case, and the broad declarations appropriate in those cases can not be accepted as authority in this.

We conclude that the term "railroad," as used in article 3312, is confined to the limits of the right of way of such railroads. We think that this construction is supported by the fact that all claims for construction of every other class of buildings or improvements of any character whatever were, at the passage of this act and are now, amply secured by the terms of article 3294 of the Revised Statutes, and the terms of the two articles do not indicate that the Legislature intended that either of them should cover both subjects of legislation, but they are so framed as to show that each is restricted in the main to the subject indicated by the section of the Constitution under which the law was framed.

We are not prepared to hold that the railroad company might not have required of the contractors a bond binding them and sureties to pay all debts contracted with persons for labor, material or other things necessary to the performance of the contract, whether the claims might be asserted against the railroad company's property as a lien or not; and that under such a contract, if it had been made, the materialmen and the laborers might sustain an action against the contractors and their sureties upon the bond. The terms of the contract involved in Jordan v. Kavanaugh, 63 Iowa, 157, were much more specific than in this case. But we find in the bond under consideration no provision which will justify such interpretation. The only support for that construction is the following language: "Now, the condition of this obligation is such that if the above bounden E. B. Evans and C. A. Hoshour shall well and faithfully pay all laborers, mechanics, materialmen, and persons who supply such contractors with provisions or goods of any kind. all just debts due to such persons or to any person to whom any part of such work is given, incurred in carrying on such work agreed to be done and performed by the said above bounden E. B. Evans and C. A. Hoshour." There is not in this clause any promise by Evans and Hoshour to pay those persons who might contract with them during the progress of the work; it is simply the expression of a condition upon which their liability to the railroad company is defined and for a breach of which they would be liable to the company itself. Standing alone, the clause would not support the claim. The character of the instrument as a bond of indemnity to the railroad company is clearly established by the language which precedes that clause, which is, in substance, that the bond is intended and given as additional security to the railroad company for the

performance of the contract, and by the clause which immediately follows that relied upon, viz: "And also shall well and truly save and keep harmless the said Gulf, Colorado & Santa Fe Railway Company from the payment of any and all liens, claims, demands, costs, suits, judgments, and executions that may be made, taken, rendered, had, or obtained against the said Gulf, Colorado & Santa Fe Railway Company, or its property, by reason of the nonpayment of any of the debts, claims. or demands of any of the several parties hereinbefore mentioned and provided, and shall duly perform and observe all the stipulations and agreements contained in said contract and on his part to be performed. * * * then this obligation shall be null and void; otherwise, to be in full force and virtue." If there were doubt as to the meaning of the language first quoted, it is surely dispelled by the full expression of intention contained in the context of the bond.

No liability of the railroad to plaintiffs nor lien upon its property being shown, there has been no breach, therefore no right of action upon the bond.

We therefore answer the first question, that the liens which the parties to this suit might have asserted against the railroad company are provided for in article 3294, Revised Statutes, and are not included in article 3312.

The instrument submitted is an indemnity bond to the railroad company and does not give a right of action to the laborers and materialmen against the sureties upon the bond.