STANDARD ACCIDENT INSURANCE COMPANY V. R. P. BLYTHE ET AL.

No. 6917.   Decided July 21, 1937.
Rehearing overruled October 13, 1937.
(107 S. W., 2d Series, 880.)

*Abney & Whitlaw,* of Brownsville, for plaintiff in error.

Where a building contract obligates a contractor to pay all claims or debts for labor and material, or claims of other nature for which the owner might become liable, and a bond is given for the faithful performance of the contract, an unpaid claimant has no right of action on the bond to enforce payment of such claim and no liability under the bond to the owner arises until such owner's liability, or a lien on his property, is fixed. E. Nelson Co. v. Roddy, 34 S. W. (2d) 624; Trinity Co. v. Lion Bonding Co., 229 S. W. 483; U. S. Fidelity Co. v. Henderson County, 276 S. W. 1119.

*Terrell, Davis, Hall & Clemens, Theo F. Weiss, Hirshberg & Powell,* and *M. A. Childers,* all of San Antonio, and *C. S. Eidman, Jr.,* of Brownsville, for defendants in error.

The bond, viewed in the light of the circumstances surrounding its execution, was susceptible of no other construction than that it was intended to protect the subcontractors, materialmen and laborers. 7 Tex. Jur. 83; 77 A. L. R. 41.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The case is fully stated in the opinion of the Court of Civil Appeals, for which see 80 S. W. (2d) 810. As it comes to this Court there is presented for decision but one question, the liability of the surety on a private contractor's bond to subcontractors, materialmen and laborers who furnished material or performed labor on the structure or improvements erected by the contractor. H. W. Bush and wife entered into a building contract with R. P. Blythe, whereby the latter became obligated to furnish the labor and material and make certain improvements upon the Bush home. The contract, among other things, provided:

"It is further agreed and understood that the Contractor shall at the time of the execution of this obligation, furnish to the Owner and attach hereto a bond satisfactory to said Owner for Fifty (50%) per cent. of the total contract price for the building, as hereinabove mentioned, conditioned that said Contractor shall complete all portions of the work in strict accordance with the plans, specifications, addendas and details of this contract, and further conditioned that said Contractor shall well and truly perform each and every obligation imposed thereby."

The bond was executed in accordance with the contract with plaintiff in error as surety thereon, the defeasance clause reading as follows:

"Now THEREFORE, the conditions of the foregoing is such that if the said Principal shall well and truly and faithfully comply with all the terms, covenants and conditions of said contract on the part of the Principal, to be kept and performed according to the tenor thereof, *and promptly making payment when due for all labor and material entered therein, including payment to the sub-contractors, if any,* and save and hold harmless the owner of said premises from any and all damages to property or personal injury sustained by any person in or about said premises during the said construction, then this obligation shall be null and void, otherwise to be and remain in full force and virtue of law." (Italics ours.)

We adopt the following from the opinion of the Court of Civil Appeals:

"In due course Blythe, as contractor, completed the improvement to the satisfaction of Bush, who accepted it. But it developed that Blythe had failed to pay some of the subcontractors, materialmen, and laborers employed by him in performing his contract with Bush.

" * * *

"It will be observed from a careful scrutiny of the pertinent provisions of the contract that they relate only to materialmen's and laborers' claims 'for which the owner might become liable,' or claims which the owner 'may be compelled to pay,' or 'claims against' the owners' premises; and that the owner was authorized to deduct from sums earned by the contractor only 'an amount sufficient to completely indemnify the owner against such claims.' It is conceded by the parties, first, that the owner could not be personally liable to the laborers and materialmen for work done and materials furnished under the contract; and, second, that the property, being a homestead, could not be subjected to the laborers' and materialmen's lien."

We observe in this connection that the fact that the property was homestead did not appear in the contract or bond. The contract between the contractor and owners expressed no purpose to have the bond executed for the benefit of subcontractors, materialmen and laborers, and neither was such purpose expressed in the bond. In short, if the defendants in error have any right of action against the plaintiff in error, the surety on the contractor's bond, it is in virtue alone of the italicized language of the defeasance clause in the bond above copied. The

question, thus narrowed down, is whether the language of the defeasance clause of the bond, standing alone, gave a direct right of action to subcontractors, laborers and materialmen against the surety on the contractor's bond to the owner.

■ The leading case on the question is National Bank of Cleburne v. Gulf, C. & S. F. Ry. Co., 95 Texas 176, 66 S. W. 203, hereinafter referred to as the Bank-Railway case. In that case the defeasance clause of the bond contained language very similar to that italicized above, and there was squarely presented to this Court for decision the question of whether, standing alone, that clause would support an action by materialmen and laborers against the surety on the bond. In a carefully considered opinion by Justice BROWN it was held that the language was simply the expression of one of the conditions for a breach of which the principal and sureties on the bond would be liable to the owner, and that, standing alone, it gave no cause of action to the materialmen and laborers. The bond was construed as an indemnity bond to the owner. That decision has been many times followed and approved. Among the cases following it may be listed the following: General Bonding, etc., Co. v. Waples Lumber Co., 176 S. W. 651 (error refused) ; Oak Cliff Lumber Co. v. American Indemnity Co., 266 S. W. 429; Maryland Casualty Co. v. Wilson, 51 S. W. (2d) 1044 (error refused). That rule was reannounced in American, etc., Co. v. Roddy, (Com. App.) 51 S. W. (2d) 280, and Parker Roofing Co. v. Ætna, etc., Co., (Com. App.) 55 S. W. (2d) 508. Those decisions rule this case.

Defendants in error rely upon the case of Wm. Cameron & Co. v. American Surety Co., (Com. App.) 55 S. W. (2d) 1032. That decision does not support the judgment below for the language of the defeasance clause in the bond under review differs materially from that in the bond construed in that case. We can not assent to the proposition that the opinion in that case overruled and set at naught the decision in the Bank-Railway case and the other decisions of this Court following it. On the same day that opinion was released by this Court there was also released an opinion in the Parker Roofing Co. case, supra, in which the rule announced in the Bank-Railway case was expressly reaffirmed and properly applied to the bond and contract there under review. To construe these decisions as conflicting would be to place this Court in the attitude of having released two irreconcilable opinions on the same question on the same day. That is utterly unthinkable. The Court merely entered the judgment recommended in that opinion, a practice no longer obtaining here. Upon what theory the Court entered

that judgment we are not now concerned. It is true that in the case of American Surety Co. v. Shaw, (Com. App.) 69 S. W. (2d) 47, the Court approved the holdings on the questions discussed in the opinion. That case cited and followed the Wm. Cameron & Co. case, but the opinion did not discuss the question here involved. It disposed of it by a mere reference to the former holding.

It is claimed that the judgment of the trial court is supported by the holding in Mosher Mfg. Co. v. Equitable Surety Co., 229 S. W. 318. We are not called upon to analyze and construe that opinion, for this Court has heretofore refused to sanction the proposition that the fact that in a given case the property improved is the homestead of the owners distinguishes it from the Bank-Railway case. General Bonding & Casualty Insurance Co. v. Waples Lumber Co., supra (error refused) ; Maryland Casualty Co. v. Wilson, supra (error refused). In the latter case the contract and bond were similar to those in the instant case. The petition of a materialman declaring upon the bond alleged that at the time the contract for the erection of the residence was executed the owner was a married man; that his wife was living with him; that the property on which the house was to be erected was the homestead of the owner and his wife, and that this fact was known to all parties when the bond was executed. Notwithstanding these allegations, the Court of Civil Appeals held the petition subject to a general demurrer, and this Court refused an application for writ of error. We have examined that application. In it there was presented ably the contention that the decision of the Court of Civil Appeals was in direct conflict with the decision in the Mosher Mfg. Co. case, and with the decision in the case of Smith v. Fidelity & Deposit Co. of Maryland, (Com. App.) 280 S. W. 767, which cited and followed the Mosher case. By its action in refusing the application this Court declined to accede to the proposition that the rule of decision in the Bank-Railway case is not applicable in cases where the property improved is the homestead of the owner. Whether the theory of the Mosher case would be applied in a case wherein the fact that the property is homestead appears in the contract or bond is not before us for decision. That fact does not appear in the contract or bond in this case, but rests in parol.

■ There are expressions in our decisions that the intent of the parties to a bond may be determined by considering extraneous matters. The better rule, however, is that contracts and bonds of the nature of those here involved are plain and unambiguous; that they should be construed by their provisions alone,

and that the intent and legal effect thereof should not be arrived at by a consideration of extraneous evidence. Uniformity of decision could not be attained were the parties permitted to go outside the terms of the instruments themselves and consider parol evidence to determine intention.

It is claimed that the conclusions above announced are not in harmony with the decisions of the numerical majority of courts in other jurisdictions. From a consideration of the many cases reviewed in a copious note in 77 A. L. R., beginning on page 21, it would seem that the claim is probably well founded. In the light of this fact the question has been carefully reconsidered, but after repeated conferences it has been concluded that the established rule in this State is sound and should be adhered to. To our minds a court is not justified in reading into a condition in a defeasance clause of an indemnity bond made by a private contractor to the owner a purpose to make third parties beneficiaries thereunder. That purpose should appear elsewhere in the bond or contract. At any rate, the rule to which we adhere in this opinion is firmly established in our jurisprudence and will not now be disturbed.

The judgments of the trial court and Court of Civil Appeals, in so far as they award recovery against plaintiff in error, are reversed and rendered. In other respects they are not challenged and will not therefore be disturbed.

Opinion adopted by the Supreme Court July 21, 1937.

Rehearing overruled October 13, 1937.